We will begin with argument in U.S. v. Samson. May it please the Court, may I have one minute rebuttal, reserve one minute, Judge? Yes. Let me start off by saying that there are no substantial individual questions on all three counts of conviction. I'll start with the obstruction of justice, count four. Mr. Samson was convicted of Section 1503, obstruction of justice for witness tampering, conduct that is outlawed by 1512, not 1503. The government improperly attempts to create two distinct elements relating to Samson's state of mind, specific intent and corrupt purpose, to somehow cabin its witness tampering from arguments of corrupt purpose and sequester them from the conviction. In reality, there is only one element relevant to his defendant's state of mind that is set forth in quatron, wrongful intent or improper purpose to influence a proceeding. If the defendant was using confidential information to bribe jurors, for example, he can only be prosecuted under 1503. If the defendant was using confidential information to tamper with witnesses, he can only be prosecuted under Section 1512. If one tries to simply get confidential information without wrongful intent, there is no obstruction. That is why the government argued Samson acted to impede the Ahmaud mortgage case by obtaining confidential information for the purpose of witness tampering in that case. Also, I'll— Did he ever find out who the witnesses were from the paralegal in the U.S. Attorney's Office? I'm sorry, I didn't hear that. Did he ever find out from the paralegal who was providing him information who those witnesses were? He never found out. They never got any information that was of any use. Also, the defense did not waive this issue. I've listed a number of factors in our papers that clearly show that. But in addition to the factors listed in our papers that show no waiver, let me just say on June 29, 2015, mid-trial, the government asked the court to, quote, instruct the jury that an unauthorized effort to obtain public information regarding the identities of cooperating witnesses constitutes an endeavor to obstruct justice, close quote, without reference to the purpose for which the information was sought. Therefore, mid-trial, the government was asking the judge to sanction a theory that had nothing to do with witness tampering but was just based on trying to get confidential information. Now they say we should have known before trial that their theory was witness tampering when they didn't even know themselves in mid-trial they were espousing a totally different theory. Furthermore, the second item, Sampson's conviction for falsely stating he did not recall the check register page, was improperly based on a literally true statement. That's count nine. The government ignores the critical evidentiary context. In February 2012, Sampson was given the original check register page from Ahmad at the direction of the FBI. It was original on blue check paper with a watermark. Ahmad emphasized to Sampson that the check register he had was the only version in existence. In July 2012, the agent showed him a photocopy that was physically different than the original Sampson had been given five months earlier. To Sampson, it could not have been what he had seen in February because he was told that the check register was given by Ahmad was the only existing version of that document and the document looked different. Was the one that he was given the actual original or was it a copy made to look like the original? It was an original, but it was a copy to make to look like another original that he never saw in the first place. Agent Hosey asked Sampson if he had seen the photocopy. Sampson responded, quote, he didn't have a recollection from it, close quote, but, quote, if he could check his files or there was more information, he may be able to recall, close quote. That was literally true given that the government had told Sampson he had the only existing version of the check register page and that Sampson had that version. I'm sorry. He didn't deny that he had ever seen it. He said, I don't have any recollection. He said, I have no recollection, but let me check my files. And, in fact, he actually had the document because he actually. So he actually you're saying it's literally true that he had no recollection. I mean, it doesn't matter whether if he's if he's pretending. I don't know what the theory was that went to the jury. But if he's pretending not to have a recollection when he recollects perfectly well what happened, that would not be a literally true statement. Well, except that he then goes on to say in the same statement, let me check my files. I might be able to tell you he had the other document. In fact, the other document, the original that was given in February, was brought back to the U.S. attorney's office long after the February the FBI interview. So what he was saying was all literally true. No one ever followed up to ask the next obvious question. Well, let's look at your files. What do you have? I mean, there's no way an individual could look at that check register and know for sure it was the same one, particularly when you're being shown a photocopy that looks physically different. It has a lot of numbers on it that you'd have to remember how these things were created. There's just no way that he would have known that. And he was told by the government that he had the only one in existence, that there were no copies. So the obvious reaction would be, I don't recall, but I need to check my records. He'd have to look at the one that he had to compare it. As to count 11, Sampson was convicted of falsely stating to the FBI that he had not asked any member of the Senate staff to assist on the liquor store in a sales tax matter. A substantial question here was the refusal of the district court to admit into evidence contemporaneous notes of what Sampson actually said as opposed to the agent's recollection. First, the contemporaneous notes the district court did not allow into evidence do not reflect Sampson making the statement for which he was convicted. Second, Agent Hosey's testimony created the false impression that the question about staff assistance was directed at tax matters. The contemporaneous notes of what Sampson said, in fact, graphically show that these topics arose in two distinct sections of the interview. Also, the court precluded me from cross-examining on these subjects. Finally, 25 percent of the testimony at trial consisted of evidence upon which the government argued to the jury that Sampson had committed quid pro quo bribery. After the trial, McDonald came down and it was clear that the evidence that was presented and which the government relied on was not bribery. In the context of 2015 in New York State, there can be little question that this evidence unfairly prejudiced Sampson and resulted in the three convictions. Why would it matter whether it was bribery as a matter of law, particularly according to a Supreme Court case that didn't come down until later? If this is evidence of motive, wouldn't a politician be concerned to avoid an inquiry into something that, at the time, prosecutors and defense lawyers probably would have thought was bribery, and that in any event would be significantly embarrassing to a politician to be disclosed? I would agree with you if all they were doing was arguing motive. But what they were arguing repeatedly before the jury was that Sampson committed bribery. It was quid pro quo bribery, that he was corrupt. It was not just for motive.  Wouldn't that be arguably error regardless of McDonald? If what the government was doing was trying to tar Mr. Sampson with a crime that was not charged in the indictment, I would imagine that would be an objection that could be made whether it was bribery or it wasn't. We did make that objection. But clearly it was not bribery, and the government argued repeatedly it was bribery and that Mr. Sampson was a corrupt politician. Not that he had a motive. It was all based on arguing that he was a corrupt politician and was bribing people and that Mr. Ahmad was bribing him, basically. But there was no bribery charge. The charges were obstruction of the investigation. That's correct. That's correct. But it doesn't really make a difference. The fact is they are arguing that Mr. Sampson – this is what they argued. They argued that he committed quid pro quo bribery. Not true. Thank you, Mr. Ackerman, and you've reserved a minute. Mr. Solomon. Thank you, Your Honor. May it please the Court, Alex Solomon for the government. Let me just briefly address the issue of whether we argued to the jury that Sampson had committed bribery. As Judge Irizarry properly found, the government was quite careful in its arguments to the jury. We repeatedly argued that Sampson was concerned about his possible commission of bribery, about the quid pro quo relationship that he had with Ed Ahmad, and that is the reason for the obstruction of justice. And that argument was proper also in light of the 1512b3 charge, which included as an element the commission of a possible felony. Additionally, as the defense brought up the defense of entrapment, we were properly allowed by Judge Irizarry to show predisposition evidence, which also came in through evidence of the quid pro quo relationship between Ed Ahmad and John Sampson. Turning back to the 1503 charge, our theory to the jury, if you look at the summation argument to the jury, was that John Sampson provided a false sense of security to Ed Ahmad, that John Sampson could deliver anything Ed Ahmad needed with respect to the mortgage fraud case, whether it was confidential information through his paralegal working at the U.S. Attorney's Office, whether it was confidential information from corrupt lawyers that he was having represent possible co-conspirators against Ed Ahmad, whether it was having an FBI agent who had recently retired provide inside information from both the FBI and the U.S. Attorney's Office. This was the overarching corrupt purpose that lays a foundation to the 1503 conviction. We also properly argued that as evidence of this corrupt purpose, in light of defense repeated arguments that this case was about nothing more than background research, which was completely proper, John Sampson had informed Ed Ahmad that, if necessary, he would take out cooperating witnesses in the case. So this was evidence, a piece of evidence, of the overarching corrupt intent to undermine the prosecution of the mortgage fraud case and prevent Ed Ahmad from cooperating with the government, informing the government about John Sampson's embezzlement, about all the misconduct that John Sampson had engaged in on behalf of Ed Ahmad. With respect to the false statement as to the check register page, I think Judge Irizarry was quite prescient in noting that the argument falls apart completely by the defense in light of John Sampson's statement, when confronted by law enforcement, that he did not have a recollection that he would have to check his files. If the question were truly understood as posed to John Sampson, by John Sampson, that the agent was asking about that specific document, the duplicate copy of the check register page, John Sampson's statement that he would have to check his files makes absolutely no sense. If you look at the context of the entire conversation, first Special Agent Hosey asks John Sampson about whether John Sampson had received any payments from Ed Ahmad. He asked him about individual escrow accounts in connection with that payment by Ed Ahmad. And then he showed him the check register page, the copy of the check register page. John Sampson initially said, I don't have a recollection. I'll have to check my files. When pressed on it further, he said, I've never seen this before. I don't know what it is. That was the false statement, so it makes absolutely no sense for the defense to suggest that the entire line of questioning taken in the proper context was only about this photocopy of the check register page. And that's what Judge Irizarry found in rejecting the defendant's Rule 29 argument, and we would ask the court to adopt the same reasoning. Finally, with respect to the liquor store false statement conviction, first of all, the notes are entirely hearsay. It's not entirely clear, if you look at the notes, that John Sampson's denial that he had ever used a staff member to assist with the liquor store was not in the notes. The notes reflect statements by John Sampson that are consistent with Special Agent Hosey's testimony at trial. Additionally, with respect to the order of the questioning to John Sampson by Ken Hosey, it's quite clear that the judge did allow Mr. Ackerman to ask questions as to the order of questioning. She did cut off that questioning after he persisted with asking the same question over and over again, and that was entirely proper. So Mr. Ackerman was able to successfully elicit from Ken Hosey that there were two separate conversations, or two separate portions of the conversation with John Sampson pertained to the liquor store, and that the alleged false statement occurred towards the end of the second session. If there are no further questions, we'll rest on our beefs. Mr. Solomon, just to remind me, what's Mr. Sampson's status right now? And I just don't remember, I'm sorry. Is he waiting a reporting date, or is he incarcerated? His report date is April 21st. Okay, good. Thank you. If I might, Your Honors. First of all, in rebuttal, let me just say that the notes were not being offered for hearsay. They were being offered for the fact of what was said. That was extremely important in the context of this case. They're relevant because? Because they were exculpatory. They showed that Mr. Sampson never said anything about asking his staff to do anything with respect to the tax matters. They're relevant because they showed that when they finally started talking about tax matters and liquor store, that if you look at these notes and you go page one, page two, page three, page four, you see that these are so totally separated. And then when Agent Hosey testifies, he tries to make it look like they all happened at the same time. He juxtaposes those two things. If I had those notes and I could have showed them to the jury, I'd rest assured that they would have never convicted him on this charge. With respect to the false statement about the duplicate, there's no question that Mr. Sampson never said he had never seen it before. He said he didn't recall and he'd have to check his records. It was that simple. Again, Mr. Solomon doesn't even mention the fact that it was the government that told him he had the only copy of the check register page in existence. How could you expect somebody who thought they had the only page in existence to say that's the same one that I was given five months before? It was the government. It was an undercover operative of some kind, right? But the government told him what to say and then they had him. I understand that. I understand that. But once you know that it's a cheat, once you know because here's the government asking you about it, you no longer believe that this was the only copy. You think, good grief, they've got another copy. This was all a setup, right? Why isn't that a reasonable thing for the jury to conclude? Because there's no way you would necessarily know that it was the same copy.  It was larger. Well, that's a different argument than the argument that he was told it was the only copy. He was told it was the only copy by somebody that once the agent is interviewing him about it, he realizes was lying to him all along. Not necessarily because he didn't know that was the same check register page you were shown before. But that's a different issue. That's based solely on it looks different. That's not based on some notion that the government told him that it was the only copy and then they show him something and he thinks, oh, well, I know it can't be right because I have the only copy. He doesn't know any such thing. Because he has every reason at that point to understand that the guy who told him it was the only copy was lying to him. Not necessarily because he doesn't know what that check register was. He doesn't know if it's the same one. That's the problem. He doesn't know that. That's what I understand. That is what is the problem is that it doesn't look the same. That's the whole problem. Well, it's more than that. It doesn't look the same. It's also he's told that he had the only existing document. I understand your argument. Anyway, it certainly doesn't look the same. Thank you, Mr. Ackerman. You've got two minutes. Okay. Thank you. Thanks very much. Thank you both. We'll reserve decision, but we'll get you an answer very shortly.